## EWING *vs.* SANFORD.

1. In actions for malicious prosecution, two things are essential to be established by the plaintiff: first, the absence of all *probable cause* for such a prosecution on the part of the defendant; and secondly, that the prosecution was malicious.

2. The defendant may successfully defend, by showing either that there was probable cause for the prosecution, or, admitting that there was not probable cause, that he had not been actuated by what the law terms malice.

3. No matter how far a man may be impelled by malice, in prosecuting another on a criminal charge, the law, from motives of public policy, will hold him harmless, when sued for a malicious prosecution, provided he can show probable cause.

4. On the other hand, if he cannot show probable cause, the law will imply malice from the absence of probable cause, unless he can show, by way of repelling this implication, that such facts and circumstances existed, as, although not amounting to probable cause, were calculated to produce at the time, in the mind of a prudent and reasonable man, a well grounded belief or suspicion of the party's guilt; and that he was not, therefore, actuated by malice, in commencing the prosecution.

5. The refusal to give a charge in the precise language asked by counsel, is not

error, provided the charge that is given is a full and fair exposition of the law,

6. E. prosecuted S, for stealing a slave, which S. afterwards recovered from E. in an action at law; and after the termination of the prosecution, S. brought an action on the case for malicious prosecution against E·  *It was held :*
   That the record of the suit for the recovery of the slave was admissible evidence for the plaintiff.

7. In case for malicious prosecution, it was consented, at the close of the trial, that the clerk might receive the verdict; during the recess of the court, the jury returned their verdict to the clerk as follows: "We, the jury, find for the plaintiff, and assess his damages at $2,500," and requested him to have it put in proper form by the court, if it was not correct, after which they were discharged for the day, and separated; the jury were in court the next morning, and renewed their request to the court, whereupon the court, against the defendant's objection, directed the verdict to be entered in proper form. *Held :*
   That there was no error in the alteration of the verdict.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. LYMAN GIBBONS.

This was an action for a malicious prosecution brought by Sanford against Ewing. The prosecution instituted by Ewing against Sanford, was for the larceny of a slave, a woman named Eliza.

The evidence of the cause showed, that the negro woman Eliza had been levied upon as the property of T. Sanford. James Sanford, the plaintiff, was present at the sale, and forbid the sale, and gave notice that he should claim and hold the said slave, as his property, notwithstanding the sale. The defendant bought the slave at said sale, and placed her with one Carmelick. Plaintiff got her out of the possession of Carmelick without violence.

Defendant consulted several attorneys, before he made the oath for the arrest of the plaintiff on the charge of larceny, and, by most of them, he was dissuaded from making the oath, though, as to the counsel given him by one of the attorneys, the testimony was conflicting.

The plaintiff was committed to prison on the charge by a justice of the peace, and was discharged the next day, on *habeas corpus,* by a Judge of the Circuit Court.

A. McKinstry, Esq., an attorney at the time the affidavit was made by defendant, and who had been consulted by him, was asked by defendant, on cross-examination, "if he did

not tell the defendant that the plaintiff had no title to the negro, and that she was subject to the execution under which she was sold?" The witness answered affirmatively. To rebut this evidence, and to show that the plaintiff had title to said slave, the plaintiff introduced the record and judgment of a suit in the Circuit Court by plaintiff against the defendant for this slave, in which plaintiff recovered, which judgment was rendered subsequent to the arrest, and after the slave had been delivered by the justice to the defendant. To the admission of this record, defendant excepted.

Testimony was introduced by defendant, conducing to show that the slave was not the property of the plaintiff at the time of the sale, but was then subject to the execution against T. Sanford. He proved that plaintiff refused to make claim, and give bond for the trial of the right of property under the statute, and that the slave was found at the house of the plaintiff after she was taken from the possession of Carmelick. He also introduced evidence conducing to show that he was advised to the course he pursued in making the affidavit by competent legal counsel, to whom the facts and circumstances of the case were fully stated. There was, also, testimony that he was dissuaded by other counsel.

The court, after giving certain instructions to the jury, on the subject of malice and probable cause, and the measure of damages, was requested, by the counsel for the defendant, to instruct the jury as follows: "That if defendant believed, at the time he made the affidavit, that the conduct of Sanford, forming such ground of accusation, amounted to the offence charged, then this action cannot be sustained, and they must find for the defendant." This the court refused as asked, but gave it with this qualification, "that if they found that the defendant, not being a lawyer, had first advised with a lawyer, and, on a fair and honest statement of the facts to him, he had founded his belief upon the counsel or advice the lawyer had given him, then, if he believed the facts amounted to a larceny, he would be justified, and the plaintiff could not recover." To the refusal and to the charge as given, defendant excepted.

Counsel for defendant further asked the court to charge: "That although Ewing, in this action, may not be able to

show probable cause for prosecuting Sanford, or Sanford may show a state of facts from which the want of it is inferable, yet, if the defendant acted under an honest belief that the plaintiff was guilty of the offence charged, plaintiff cannot recover." This the court refused, but gave it with the same qualification as the last.

The court was asked to charge: "That if the jury found that the magistrate, before whom the plaintiff was brought, upon hearing the evidence *pro* and *con*, bound over the plaintiff to answer the charge on which he was arrested, that this was *prima facie* evidence of probable cause." This the court refused.

One charge given by the court was in these words: "If they (the jury) found that the defendant had prosecuted the plaintiff without probable cause, and with malice, either express or implied, then the plaintiff was entitled to a verdict, and the defendant was guilty as charged; and the jury must make him pay for the wrong he has done."

The parties consented, at the close of the trial, that the clerk might receive the verdict. It appeared that the jury, during the night, had rendered to the clerk the following verdict: "We, the jury, find for the plaintiff, and assess his damages at $2,500," and had made of the clerk a request that the same might be put in proper by the court, if it was not so. The next morning the jury were in court, and renewed the request to the court. The defendant's counsel objected, that there was no such verdict as would authorize a judgment against the defendant; but the court directed the clerk to alter the verdict so as to make it read as follows: "We, the jury, find the defendant guilty, and assess the damages at $2,500," defendant's counsel objecting. It appeared that the jury, after rendering their verdict the night before, had been discharged for the day, and separated.

The charges aforesaid, and the refusal to charge as requested, and without qualification, and the alteration of the verdict aforesaid, are assigned for error.

BOYLES, for plaintiff in error:

1. McKinstry was asked by defendant's counsel, whether he, as the professional adviser of Ewing, did not tell him,

before the arrest was made, that James Sanford had no title whatever to the negro woman, Eliza; to which he replied, that he did.    This was entirely competent, as tending to rebut the presumption of malice, and was elicited for no other purpose.    To rebut this evidence, the court permitted the plaintiff to read to the jury the record of the suit had between the parties subsequent to the arrest, for the recovery of the slave.    This testimony was wholly irrelevant, and calculated to mislead the jury, and should have been excluded.    1 Saunders' Pl. and Ev. 491; 1 Dana, 14; 3 Peters, 320; 4 Litt. 272; 11 Mass. 140; 7 S. & R. 156.

2. The court erred in the charges given and refused.    If the magistrate before whom the plaintiff was brought, after hearing all the evidence *pro* and *con*, bound him over to appear at the Criminal Court to answer the charge, this was *prima facie* evidence of probable cause; and the court should have so charged, on defendant's request.    4 Wend. 591; 4 Munf. 462; 14 Maine, 362; 22 ib. 212; 2 Dev. & Bat. 492; 15 Mass. 243, and cases there cited.    The next two charges requested by defendant's counsel, should have been given as asked.    They are in the precise language employed by this court in 11 Ala. 916; which was re-affirmed in 17 ib. 28. Good faith and an honest belief imply the absence of malice. 17 Ala. 28; 19 ib. 321; 1 Mees. & W. 583; 1 Hals. 166; 2 Munf. 23; 6 Bing. 183; 4 Ired. 382; 5 S. & R. 438.

3. The court erred in altering the verdict after the jury had been discharged.    7 Por. 218; 6 Mass. 1; 10 Shep. 316; 3 Ala. 359; 1 Mis. 401; 1 Stew. 36; 1 Branch, 189; 3 Blackf. 256; 11 Ohio, 482; 7 Hals. 252.    After a verdict is received and recorded, and the jury dismissed, they cannot alter it on the ground of mistake.    16 S. & R. 414; 1 Texas, 50; 9 Ired. 28; 2 Greenl. 37, and cases there cited.

JOHN A. CAMPBELL, *contra:*

1. The judgment for Sanford against Ewing was competent in every aspect of the case.

Sanford declares that the accusation was false.    The proof that the slave was his, establishes the allegation.

2. The first charge asked, which is complained of, makes the belief of Ewing the criterion upon which an accusation is

to be founded. If he believes it, according to this prayer. that is enough. No authority goes to the extent.

3. The next charge, which only differs from the other, makes it depend upon the honesty of the belief. An honest belief is a very equivocal term.

The law is, that probable cause must exist, and without it, malice is to be inferred.

4. Now, malice is to be rebutted by proof that the party adopted all the precautions which prudent men adopt before performing an act of responsibility, viz: taking counsel of competent men, who, upon hearing all that he has said, have advised his proceedings. If he has not done this, his act is hasty, ill considered and tortious, and, therefore, malicious· His hasty, ill considered and tortious act is, in point of law, malicious. The act has been shown to be without probable cause; that is, without a reasonable foundation. Here is evidence of hurry, inconsiderateness, recklessness and improvidence.

In the case before the court, there is a distinct finding by the jury that he did not act under, but against the advice of counsel. This finding is conclusive upon the subject of malice. This was a direct issue, as is shown by the evidence.

PHELAN, J.—It nowhere appears that the charge of the judge, in which he told the jury, that if they found the defendant guilty as charged, "they must make him pay for the wrong he had done," was excepted to. There is nothing in these words but a sound principle, at all events. The counsel commented on the manner of the judge saying it was angry and menacing. There is nothing in the bill of exceptions or in the words themselves, that gives any indication that the manner of the judge was wanting in moderation or propriety, if we even had power to take notice of that.

The court was requested to charge, "that if defendant believed at the time he made the affidavit that the conduct of Sanford, forming such ground of accusation, amounted to the offence charged," they, the jury, must find for the defendant.

In actions for malicious prosecution, two things are essential to be established by the plaintiff: 1. The absence of all probable cause for such a prosecution on the part of the defendan ; 2. That the prosecution was malicious.

The defendant may successfully defend, by showing, either that there was probable cause for the prosecution, or, admitting that there was not probable cause, still, that he had not been actuated by bad motives, or what the law terms malice.

Wherever, in actions of this class, the defendant, although unable to show a state of facts sufficient to establish the truth of the accusation which was preferred against the plaintiff, is nevertheless able to bring forward such a state of facts and circumstances, as were calculated to induce, in the mind of a reasonable and prudent man, a well-grounded belief of the guilt of the party, this will be sufficient for his protection. To hold men to more than this, would so greatly discourage prosecutions, that the public good would suffer for the want of seasonable cooperation upon the part of private individuals, in aid of the public authorities, in suppressing crime.

Malice is either express or implied; express, when evinced by threats, old grudges, &c.; implied, when we can find no good or justifiable motive for an act calculated to do harm to another. When we can find no good or justifiable motive for an act calculated to do injury to another, we imply necessarily a bad motive, or malice.

No matter how far a man may be impelled by malice in prosecuting another on a criminal charge, provided he can show probable cause, the law, from motives of public policy, will hold him harmless, when sued for a malicious prosecution.

On the other hand, if he cannot show probable cause, the law will imply malice, from the absence of probable cause, unless he can show, by way of repelling this implication, that such facts and circumstances existed, that, although not amounting to what is called probable cause, they were calculated to produce at the time, in the mind of a prudent and reasonable man, a well-grounded belief or suspicion of the party's guilt, and that he was not, therefore, actuated by malice, in commencing the prosecution.

In Chandler v. McPherson, 11 Ala. 916, the court say, that "if the defendant acted under an honest belief that the plaintiff was guilty of the offence with which he was charged, no recovery can be had against him." In the subsequent case of Long v. Rodgers, 19 Ala. 321, this honest belief is explained, and declared to be, not "a belief founded in the ca-

price, prejudice, or idle dreams of the prosecutor, in the absence of all facts and circumstances which would generate such suspicion of guilt in the mind of a reasonably prudent man," but a belief founded on facts and circumstances which, although not amounting to probable cause, would yet induce, in the mind of a reasonable and prudent man, so serious a suspicion of the party's guilt, as to repel effectually the idea that he acted from malice in prosecuting him. See also, Ewing v. Sanford, 19 Ala. 605. The charge requested of the court falls short of this, by making the belief of the party alone, without further qualification, sufficient to exonerate him, and for that reason the court acted properly in refusing it. The charge that was given by the court as qualified, was going fully as far as the law would justify in favor of the plaintiff.

The refusal to give a charge correct in itself, in the precise words requested by counsel, is not error, if the charge given by the court on the point in question is a full and fair exposition of the law. A charge, correct in itself, may mislead a jury sometimes for want of fullness, simplicity or clearness of expression. It is true, a court may, and commonly ought, to give a charge which is correct in itself, though liable to any of these objections, in the very words that are proposed, and then add explanations afterwards. But this court has holden in a late case, and after careful consideration, that it was not error to refuse to adopt the very words of the counsel, provided the charge that was given was a full and fair exposition of the law; and that decision will be followed. Long v. Rodgers, 19 Ala. 321.

Thus, the charge that was asked, in which the court was requested to instruct the jury, that an "honest belief" of Sanford's guilt on the part of defendant, even in the absence of proof of probable cause, would be sufficient to excuse him, may be, strictly speaking, correct, if we interpret the word "honest" according to the signification put upon it in 19 Ala. 321. But the court was not bound to give it as the counsel asked it. It did not really contain within itself an instruction calculated to enlighten the jury fully. Had it been given as the defendant asked it, the court would have been bound, in order to prevent a probable misapprehension, to

have gone on and explained what was meant by an honest belief.

After having just before given an elaborate and correct charge on the subject of malice and probable cause, fully explaining and setting forth the principles of law applicable to the case, which the defendant suffered to pass without exception, the court was requested by the counsel for the defendant, to charge the jury, that if the magistrate, on the trial of the warrant, bound over the defendant to answer the charge, "that this was *prima facie* evidence of probable cause." This charge the court refused to give.

In view of the proof of the cause, and the charge already given, the court properly refused to enunciate, without further explanation, the principle, however correct abstractly considered, that was contained in the charge requested by the defendant. Without explanation, which the court was not bound to give, the simple enunciation of that principle would give it a seeming importance, more calculated to mislead, than to enlighten the jury. All the facts connected with the arrest of the plaintiff, his trial and commitment by the magistrate, and his subsequent discharge, were before the jury; and to charge as to the effect of the commitment by the magistrate merely, without reference to the other proof in the cause, would not have been proper.

The admission of the record of the suit between these parties, in which Sanford recovered of Ewing a judgment for the same negro woman which Ewing had prosecuted him for stealing, was proper, under any aspect of the case. To repel the truth of the charge preferred by Ewing, was one of the duties that devolved on Sanford under the allegations of his declaration, and there was no proof more proper for such a purpose, than a recovery of the very slave he was charged with stealing, in a suit against the person who preferred the charge, and to whom she had been delivered by the magistrate.

The last assignment relates to the alteration made in the form of the verdict by direction of the court. The verdict as rendered, was in substance the same, both before and after the alteration directed by the court. It was a correction as to matter of form only, and this the court may properly di-

rect at any time. In an action on the case, a verdict saying, "We, the jury, find for the plaintiff, and assess his damages at $2500," is equivalent to saying, "We, the jury, find the defendant guilty, and assess the damages at $2500." "We find for the plaintiff," is, in other words, "We find *the issue* for the plaintiff.

There is no error in the record, and the judgment below is affirmed.